IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMASENE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | No. 11 C 0587 |
| v. ) | |
| ) | Judge John A. Nordberg |
| VVF ILLINOIS SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination case. Plaintiff Thomasene Johnson is a black female who was 57 years old at the time of these events. On March 24, 2010, she was fired from her job. Her employer, VVF Illinois Services, LLC ("VVF"), explains that Johnson was fired because she violated plant rules three times within a 12-month period. Asserting claims for age, race, and sex discrimination under federal discrimination statutes, Johnson alleges that the company's explanation is pretextual covering up a discriminatory motivation. Johnson complains that she received undue scrutiny from her immediate supervisor and that the three disciplinary violations were either unfounded or arose out of a misunderstanding. She also asserts a claim for retaliation. Before the Court is VVF's motion for summary judgment. As explained below, Johnson has not offered admissible evidence that would allow a reasonable factfinder to conclude that she was discriminated against.

## FACTUAL BACKGROUND

VVF manufactures personal care products such as hotel soap and deodorant.[1] (DF4.) Johnson worked as a plodder systems specialist at VVF's facility in Montgomery, Illinois.

---

[1] The facts are undisputed unless otherwise noted and are taken from the parties' Rule 56.1 statements. The facts from defendant's Rule 56.1 Statement are abbreviated as "DF__" and those from plaintiff's as "PF__."

-1-

(DF2-3.) She had worked there since 1974, although VVF only acquired the facility in January 2009 in an asset purchase from Henkel Corporation. (DF3-4.)[2]

VVF had a formal written disciplinary policy for all employees at the Montgomery facility. (DF7.) The policy applied progressive discipline in 12-month periods. During a 12-month period, for each violation of plant rules, an employee would be given a verbal warning, then a first written warning, followed by a second written warning and a two-day suspension, and finally would receive a third written warning resulting in termination. (DF8.) It is undisputed that VVF followed this procedural framework in firing Johnson.

In April 2009, Johnson was disciplined for failing to properly change the color on a product line. (DF15.) Johnson believed the punishment was undeserved because the original problem had been created by another employee named Deborah Tavares. (DF16.) However, months later, after Johnson complained, the company agreed to remove this incident from her disciplinary record and it therefore played no role in her firing.

On October 17, 2009, Johnson received a verbal warning for being tardy to work in violation of Plant Rule I.G. (DF18.) Johnson did not file a grievance regarding this disciplinary action because, as she admitted in her deposition, "that was my fault for not checking the schedule." (Ex. B at 151.)

This case thus narrows down to the three incidents for which Johnson received a written warning. The first occurred on December 12, 2009. (DF20.) Tom Gyftakis, a Team leader, became concerned that Johnson and another employee, Mario Gonzales (Hispanic male), failed to complete their assignments. (Ex. D, Terriquez Decl. ¶ 10.) As a result, the company investigated the matter by "review[ing] a videotape of Johnson and Gonzales' comings and goings that day and determined that each of them had [] taken breaks in excess of that allowed under the Company's Plant Rules." (*Id.*) Both Johnson and Gonzales were given written warnings. Johnson's warning states that she was "away from [her] workstation without authorization during work hours, observing over seventy (70) minutes of break/lunch time, beyond what the CBA authorizes." (Pl. Dep. Ex. 18.)

The second incident occurred on February 23, 2010, at a meeting on overtime pay. (DF 30.) According to Hector Terriquez, who was leading the meeting, Johnson told him "you don't do squat." (DF 32.) Terriquez told her to "be careful," and Johnson then repeated the statement. (*Id.*) Terriquez instructed her not to say it again, and Johnson looked at him and said it again in a raised voice in front of everyone else. (*Id.*) Johnson admits that she made the first two comments, but denies that she said it a third time in a raised voice. Terriquez immediately adjourned the meeting and told Johnson that her comments were inappropriate and that she had violated the Company's Progressive Discipline Policy. (DF33-34.) According to her later deposition testimony, Johnson told Terriquez at the adjourned meeting that the comment "wasn't anything personal" and was made in a side conversation she was having with another employee (Steve Rissman). (Ex. B at 93.) Johnson was apparently upset that Terriquez had "interrupted me and Steve Rissman." (*Id.*)

The third incident occurred on February 24, 2010 when Johnson failed to show up for work on time. (DF39.) It is undisputed that she showed up late because she mistakenly thought

---

[2]This would suggest that for most of her career Johnson worked for Henkel Corporation.

she had a doctor's appointment that morning, but a dispute exists whether she submitted a vacation request ahead of time which would have excused the absence. The company says it never received one. Johnson asserts that she submitted the request shortly before the 24th.

Johnson's explanation is not easy to follow. There was apparently some confusion on her part about whether her doctor's appointment was on the 24th or the 25th. On February 11th, Johnson submitted a vacation request to take off on the 25th. (DF 44.) This would suggest that at this point Johnson thought her appointment was on the 25th. However, at some point close to the appointment date, Johnson believed her appointment was on the 24th and then made a "last minute" (her words) request to take off the 24th. (Pl. Resp. at 4; PF24.) When she went to the doctor's office on the 24th, she was told that her appointment was actually the next day, February 25th, as she originally believed.

As required by the company policy, this third written warning led to Johnson's termination. (DF56.) Curt Konrardy made the decision to terminate her. (*Id.*)

On March 26, 2010, VVF offered Johnson a Last Chance Agreement ("LCA"). (DF58.) The LCA provided that Johnson could be reinstated but that she would be subject to a 12-month probationary period. (DF59.) Johnson never signed the agreement. She says that "the company pulled the agreement prior to her being able to sign it." (Pl. Resp. to DF 59.) In her deposition, Johnson explained that she thought she would be given until April 26, 2010 (approximately a month) to sign it and that she was not able to sign it on April 26th. (*Id.*) Although Johnson complains that the agreement had been "pulled" as of April 26th, she stated that she had no idea when it had been pulled. (*Id.*) She admits that no one at the company ever told her it had even been "pulled." She merely states that it was not specifically offered to her at a third step meeting on April 26th. (*Id.*) Johnson further stated in her deposition that she was told (at some unspecified date) that "there's *a possibility* [the company] will be pulling [the offer] off the table." (*Id.*; emphasis added.)

## DISCUSSION

Johnson asserts several theories of discrimination. The first is a hostile work environment claim under Title VII. To prevail, Johnson must prove "(1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based on her race [or sex]; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011).

The evidence relied upon by Johnson – consisting of only her own testimony – is insufficient to survive summary judgment. She relies on three points. First, her supervisor allegedly made her fix problems caused by other employees and then disciplined her for their failures. (Pl. Resp. at 7.) Second, her supervisor allegedly was "constantly" trying to find that she was out of her work area. *Id.* at 8. Third, her supervisor on one occasion supposedly said she "was getting too old for her job." *Id.*

The first point is conclusory and undeveloped. Johnson in the main part of her brief where she makes this argument (pp. 7-8) simply asserts this point as a fact without bothering to explain why it is supported by evidence. She does not refer to a specific example of being ordered to fix problems. As an initial point, Johnson should not force this Court to guess at her arguments or piece together her evidence from disparate places in her brief and supporting

-3-

materials and then link them back to her substantive argument. Putting this point aside, we could only find one incident fitting this description. On page 2 of her response brief, Johnson refers to an incident (the date is not clear) when her supervisor (Kandukuri) disciplined her for failing to correct an improper formula on a production line.

As for her second point, which is the claim that Kandukuri was "constantly" trying to find her out of her work area, Johnson again relies on a conclusion with no supporting argument or explanation in the argument section of her brief. The only incident fitting into this description is the December 12, 2009 incident in which she was accused of taking 70 minutes of break or lunch time. In short, Johnson's claim that the her supervisor's conduct was "constant" is simply not supported by any specific evidence. Instead, this accusation centers on a single incident.

The third point is a comment Kandukuri allegedly made to the effect that plaintiff was "getting too old for her job." (PF6.) Johnson does not say when this comment was made. This alleged comment is the only explicit statement in the case connected to race, sex, or age.

VVF objects to this evidence on multiple grounds. For one thing, it complains that there is no evidence that the unfair discipline referred to in points 1 and 2 had any connection to race, sex, or age. We agree. *See generally Hamm v. Weyauwega Milk Products, Inc.*, 332 F.3d 1058, 1062-63 (7th Cir. 2003) ("[e]xpressions of frustration with [an employee's] work performance" are generally not considered sexual harassment). Moreover, we find that these three incidents, spread over a year, are not severe or pervasive, as those terms are defined by Seventh Circuit case law. *See Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012) (being subject to "sporadic inappropriate and rude comments by [] supervisors" is not enough to create an objectively offensive environment); *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012) ("Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment."). In addition, Johnson has not even stated explicitly that she found this behavior subjectively offensive – in particular, she has never indicated that the "too old" comment made her life intolerable at the workplace. *Id.*

Johnson next argues that her firing was based on discrimination. She relies on both the direct and indirect method. *See Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012).

To prevail under the indirect method, plaintiff must satisfy the elements of the burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* The key element at issue here is whether Johnson can show that VVF treated her differently than "similarly situated" employees outside her protected class. *Id.* To meet this requirement, the plaintiff and similarly situated employees need not be in an identical situation, but they must have dealt with the same supervisor, subject to the same standards, and engaged in similar conduct. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309-10 (7th Cir. 2012.) We find that Johnson has not offered admissible evidence to meet this basic requirement.

In her response brief, Johnson simply declares, in conclusory fashion, that she has identified "nine (9) white males and one (1) female Hispanic who were treated differently on discipline and the LCA." (Pl. Resp. at 12). This is insufficient. Johnson is required to explain why her conclusion is warranted – by referring to specific facts supported by admissible evidence and by then marshaling those facts into a larger theory which is explained in the body of her brief. As we stated earlier, it is not enough to refer to her Rule 56.1 facts and then expect the Court to hunt down those facts and to assemble the pieces into a coherent picture.

Even if we were to overlook this important point, we would still find that Johnson has not met her burden of pointing to similarly situated employees. She relies solely on her own observations, but she was not involved in the discipline of these employees nor did she (for most of the incidents) witness the conduct of those employees. There is thus no basis to fairly compare Johnson's conduct and discipline to the nine employees.

Johnson also has not sustained her burden to show that the comparable employees held similar jobs. For example, she asserts that four men under age 40 were written up for being away from their work areas (PF18), but she admitted in her deposition that none of these men held the same position as she did. *See* Ex. B at 150 ("Q. So none of [the four men] have the same job responsibility as you have? A. No."). Also, in Johnson's case, her comings and goings were observed on a videotape. There is no indication whether or not the company had this kind of clear evidence regarding the other men. Significantly, however, when VVF reviewed the videotape of Johnson, it also observed a male Hispanic who took excessive breaks. Like Johnson, he was disciplined by the company.

Johnson alternatively seeks to rely on the direct method of proof. To do so, she must come forward with "direct or circumstantial evidence that creates a convincing mosaic of discrimination." *Good v. Univ. of Chicago Medical Ctr.*, 673 F.3d 670, 674 (7th Cir. 2012) (quoting *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009).

Johnson does not claim to have direct evidence but instead relies on circumstantial evidence. Her evidence falls well short of the type and amount needed to create a convincing mosaic. In her response brief, she only spends one paragraph on this argument (middle of page 14) and then only makes two arguments. First, she asserts that the third incident (doctor's appointment) was "essentially [] a misunderstanding." (*Id.*). Once again, she fails to provide an explanation. Her characterization of the incident as a "misunderstanding" by itself undermines her argument. A misunderstanding is not enough to establish pretext. *Silverman v. Bd. of Educ. of Chicago*, 637 F.3d 729, 743-44 (7th Cir.2011) ("Pretext is more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action.")(internal quotation marks and punctuation omitted). In reviewing Johnson's deposition testimony on this issue, we have difficulty even understanding her explanation for what she believes happened on the 24th and 25th. Much of the confusion arose from her mistake in going to the doctor on the wrong day and her "last minute" attempt to switch her days off.

Johnson's second argument under the direct method is that the company offered a last chance agreement to other employees in a similar situation, but pulled her offer so she couldn't sign it. (Pl. Resp. at 14.) This argument has no admissible evidence to support it. Johnson is not even certain whether or when the agreement was pulled. It is undisputed that the company gave Johnson a last chance agreement to sign on March 26, 2010. Johnson complains that no one affirmatively told her on April 26th that she could still sign the agreement. From this fact, she speculates that the company pulled the agreement at some unspecified point over the last month. But she has no evidence to back up this point. Even so, she has not disputed that she was given some period of time to sign the agreement. Her argument thus boils down to a complaint that she should have been given more time to mull over whether to accept the offer. In trying to establish a comparison to other employees who did sign the LCA, Johnson does not provide evidence as to how long those employees were given to ponder the offer or, more specifically, whether they were given an entire month to think about it.

  Beyond these two points, which are the only ones Johnson raises in her brief at page 14, we can find no evidence that could collectively establish the convincing mosaic needed under the direct method. Johnson complains that her second written warning was unfair because her job title defined her work area as the entire plant. (PF12.) From this fact, she concludes that she could not have taken an excessive break because the lunch room is a part of her general work area. This argument, if pushed to its logical conclusion, would mean that it would be impossible for Johnson to ever be accused of taking an excessive break as long as she was physically in the plant. This cannot be a true statement. Johnson's argument also overlooks the fact that company personnel watched a videotape of Johnson's specific activities. (Pl Dep. Ex. 18.) Her written warning states that she was observed taking over 70 minutes of lunch and break time. It is unreasonable to assume – without any other evidence to support the theory – that the company could not tell whether she was working or taking a break after watching a videotape of her activities. In sum, Johnson has not provided evidence to cast doubt on the company's overall explanation; there is nothing to suggest for example that the company offered inconsistent or shifting explanations.

  Johnson's last claim is for discriminatory retaliation. This claim fails again for lack of evidence to support it. Although Johnson conclusorily asserts that she made complaints about discrimination to her supervisors, she does not provide any specific dates or contextual evidence, nor does she offer any proof that she ever complained. (Pl. Resp. at 14.) The one specific example Johnson has provided is when she complained to Curt Konrardy in a meeting in January 2010. (PF15; Ex. B at 83-85.) Konrardy conducted an investigation and stated that he could find no evidence that Johnson was being harassed or discriminated against (PF16). Still, in an apparent attempt to assuage Johnson, he agreed to remove the April 2009 letter of discipline from her record, and the incident was not relied upon in her later firing. There is no evidence that Konrardy was bothered by Johnson's complaint or that he failed to take it seriously. This one complaint, in context with all the evidence, is simply not enough to allow a reasonable factfinder to conclude that her firing was retaliatory.

  For all the above reasons, we grant the motion for summary judgment, finding that Johnson has failed under Rule 56 to create a genuine issue of material fact.

**ENTER:**

*[signature: John A. Nordberg]*

**JOHN A. NORDBERG**
**Senior United States District Court Judge**

**DATED:** January 22, 2013